# Wytheville

BELL STORAGE COMPANY, INC., ET ALS. v. MRS. C. W. HARRISON.

June 13, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*James E. Heath, William G. Maupin, Vincent L. Parker* and *Fred E. Martin,* for the appellants.

*J. Brooks Mapp, Tazewell Taylor* and *Nathaniel T. Green,* for the appellee.

CHINN, J., delivered the opinion of the court.

At first November rules, 1932, Bell Storage Company, Incorporated, filed its bill in the Circuit Court for the city of Norfolk, setting forth: That it was engaged in business as a warehouseman in said city, and that on the 16th day

of the preceding February, Mrs. C. W. Harrison, also known as Mrs. Ruth Ray Harrison, deposited with it a large amount of household goods and furnishings at a storage rate of $8 per month, with certain charges thereon for handling into storage and other expenses, for which complainant issued and delivered to said depositor, in the name of Mrs. C. W. Harrison, a non-negotiable warehouse receipt; that Mrs. Harrison having failed to pay said charges, complainant, acting in accordance with the provisions of chapter 57 (section 1290 *et seq.*) of the Code, sent her a notice by registered mail inclosing an itemized statement of its claim, stating the sum due at the time of said notice, the date or dates when it became due, a brief description of the goods against which complainant's liens existed, and demanding that the same should be paid within ten days from the time said notice should have reached its destination, and further stating that unless said charges were paid within the time specified the goods would be sold at auction on Tuesday, August 23, 1932; that said charges not having been paid, complainant had proceeded to advertise said goods for sale, and to sell the same at public auction on the day specified to the highest bidder for cash; that at said sale an amount had been realized sufficient to pay complainant's claim in full and leave a balance of $339.56 in its hands; that complainant had been notified by Wm. F. Smith and Company, the Hogshire Tent and Awning Manufacturing Company, Incorporated, and D. P. Paul and Company, Incorporated, that each of them claimed a lien upon the balance in complainant's hands, and had been warned by each of them not to pay such balance to any person other than themselves; that complainant had been threatened with legal proceedings by the above mentioned parties for payment to each of them respectively of the said balance; that complainant had no interest in the balance in its hands, and was ready to pay the same to whomsoever might be entitled to it. The bill prays that Mrs. Harrison and the above mentioned lien claimants be made parties defendant thereto; that they severally set forth to which of

them the said sum of $339.56 rightfully belongs; that they may be required to interplead and settle their demands amongst themselves, and complainant be allowed to recover out of such funds the just costs of the proceedings.

Wm. F. Smith and Company, the Hogshire Tent and Awning Manufacturing Company, Incorporated, and D. P. Paul and Company, Incorporated, filed their separate answers to the bill claiming liens on the said fund by virtue of executions issued on judgments in favor of the respective respondents against C. W. Harrison, husband of the defendant, Mrs. C. W. Harrison. Mrs. Harrison was proceeded against by order of publication and made no appearance. Mr. Harrison was not made a party to the suit and was not served with process, either actual or constructive.

On December 10, 1932, the court entered a decree in the cause directing the Bell Storage Company, Incorporated, out of the sum in its hands, to first pay the costs of the proceedings, to next pay Wm. F. Smith and Company $259.80, and to then pay the balance of said sum to Hogshire Tent and Awning Manufacturing Company, Incorporated; and dismissing the cause from the docket.

On February 4, 1933, pursuant to due notice to all the parties, Mrs. Harrison filed her petition in said cause under section 6072 of the Code, setting forth that she had been summoned in the suit by order of publication and had not had an opportunity to be heard, and that the complainant had no right to maintain the bill of interpleader filed by it in said court for the following reasons: (1) That the claim of the Bell Storage Company, Incorporated, was excessive to the amount of $116.50, and that the said company had no valid claim as warehouseman on the goods of the petitioner for said $116.50, and no right to make sale of said goods to satisfy such alleged claim on its part. (2) That the sale made by complainant of the goods deposited by petitioner with it as warehouseman was illegal and void because said sale was held less than fifteen days from the time of the first publication of the advertisement of such sale, contrary to the provisions of the statute (section 1322 of the

Code), and that the act of said warehouseman in selling her goods as aforesaid was a conversion of said goods to its own use for which said complainant is liable to the petitioner. Petitioner thereupon prayed that the said decree of December 10, 1932, be reopened and reheard; that the sale of said goods be declared null and void, and the said bill of interpleader be dismissed.

On February 20th following, an order was entered in the cause granting a rehearing in accordance with the prayer of the petition, and directing that the parties to the suit answer the same within thirty days. The answers were duly filed and depositions taken, and on July 10, 1933, a final decree was entered in the cause in which it was held by the court that the sale made by Bell Storage Company, Incorporated, of the goods deposited for storage with it by the defendant, Mrs. Harrison, was invalid and of no effect, and that the said storage company had no right to maintain said suit and bill of interpleader. It was thereupon decreed that the decree entered on December 10, 1932, be annulled and set aside, and that the bill of interpleader be dismissed and the cause stricken from the docket. It is from the foregoing decree that this appeal has been taken.

It is shown by the evidence, in fact admitted, that the first publication of the notice of the sale was made on the 10th day of August, 1932, and the sale was held on August 23, 1932, less than fifteen days after the first publication of the advertisement of said sale, contrary to the provisions of section 1322 of the Code. It is contended, however, that under section 1323 of the Code the warehouse company had a right to sell the goods without any advertisement at all, because it is not shown that said goods were not perishable, and the burden rests upon Mrs. Harrison to prove that they were not perishable. The first answer to this contention is that the receipt given Mrs. Harrison by the storage company sets forth an itemized list of the goods in question, from which it appears that they consisted entirely of household furniture and furnishings which were not of a perishable nature. There is also other evidence

tending to show this. So, even if the burden were on Mrs. Harrison to prove that the goods were not perishable (which we by no means concede), we think the evidence in the record is sufficient to sustain such burden.

The second answer to the contention is, that under section 1323 of the Code it is provided that if the goods are of a perishable or hazardous nature, the warehouseman may give such notice to the owner or to the person in whose name the goods are stored, as is reasonable and possible under the circumstances, to satisfy the lien upon such goods and remove them from the warehouse, and in the event of the failure of such person to satisfy the lien and remove the goods within the time specified, the warehouseman may then sell the goods without advertising them. No such notice was given Mrs. Harrison, or attempted to be given. On the other hand, the appellant company proceeded, according to the allegations of its bill and also as shown by the evidence, strictly in conformity with section 1322, except as to the mandatory provision of that section that, "The sale shall not be held less than fifteen days from the time of the first publication" of the notice of the sale. Having adopted that method of disposing of the goods and collecting its charges, the storage company cannot now claim that it sold the goods under section 1323 of the Code prescribing the method whereby the warehouseman may sell goods in storage which are perishable or hazardous to keep. *Arwood* v. *Hill's Adm'r*, 135 Va. 235, 117 S. E. 603; *White* v. *Bott*, 158 Va. 442, 158 S. E. 880, 163 S. E. 397; *Nagle* v. *Syer*, 150 Va. 508, 143 S. E. 690; *C. & O. Ry. Co.* v. *Rison*, 99 Va. 18, 31, 37 S. E. 320.

It is next contended by the appellant that the court erred in setting aside the decree of December 10, 1932, and dismissing the bill of interpleader, because the law presumes that the goods stored by Mrs. Harrison belonged to her husband, and as Mrs. Harrison did not affirmatively prove to the contrary, she, therefore, has no interest in the property and no right to ask for a rehearing. The contention is not sound. While it is true that in a contest between the wife

and the creditors of her husband the burden rests upon the wife to prove that property she has acquired during coverture in fact belongs to her (*Yates* v. *Law*, 86 Va. 117, 9 S. E. 508; *First Nat. Bank* v. *House*, 145 Va. 149, 133 S. E. 664), as between the warehouse company and Mrs. Harrison, the case in judgment presents no such question. As between these parties, the issue presented by the pleadings is whether the sale made by the warehouse company is valid, and whether the said company had a right to file a bill of interpleader under the circumstances. The evidence shows that Mrs. Harrison made the contract for the storage of the goods, and the receipt from the warehouse company was issued in her name as the owner of the goods.

In 27 R. C. L., page 955, it is said:

"In accordance with the well-settled general rule that a bailee is estopped to deny his bailor's title, a warehouseman with whom goods have been deposited is estopped, in the absence of the intervention of a paramount title, from disputing the title of the depositor." *Tancil* v. *Seaton*, 28 Gratt. (69 Va.) 601, 26 Am. Rep. 380; *Dows* v. *Nat. Exch. Bank*, 91 U. S. 618, 23 L. Ed. 214; *Yokohama Specie Bank* v. *Geo. S. Bush & Co.*, 121 Wash. 272, 209 P. 676, 212 P. 583; *Blackorby* v. *Friend, Crosby & Co.*, 134 Minn. 1, 158 N. W. 708, Ann. Cas. 1918E, 1199; notes, L. R. A. 1918B, 662; 43 A. L. R. 153.

It is true that the rule that a bailee is estopped from denying his bailor's title is subject to the exceptions that the bailee is excused for non-delivery of the property when he can show that he has surrendered it to the rightful owner, or where the bailee has been dispossessed of the subject matter of the bailment by legal process, or where he can show he has been authorized to defend the title by the person in whom it is invested, or where the bailor parts with his title during the bailment. But it is said, "The true ground on which a bailee may set up the *jus tertii* is that the estoppel ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title

paramount." 3 R. C. L., page 88, section 16; pages 89, 90, sections 17, 18, and 19, and cases cited.

That the case at bar does not come within the principle of any exception to the general rule seems obvious. The warehouse company, therefore, cannot shield itself from the consequences of the invalid sale of the goods on the ground that because the execution creditors of Mrs. Harrison's husband claim a lien thereon she has no interest in the goods, and no right to contest the validity of the sale whereby she has been deprived of the possession of them. Under its contract with Mrs. Harrison as bailor of the goods, the warehouse company is estopped from disputing her right to assert her title thereto in these proceedings.

The next question is whether a bill of interpleader will lie in this case? It is well settled that in order to maintain a bill of interpleader it is essential that the plaintiff should be entirely indifferent between the conflicting claims to the exclusion of even an indirect interest, and this position must be one of "continuous impartiality." 15 R. C. L., page 226; notes, 35 Am. Dec. 701; 91 Am. St. Rep. 599. In a note found in 91 Am. St. Rep., page 605, it is said:

"One seeking the advantages of a bill of interpleader must show that he stands not only indifferent between the claimants, that he is without interest in the controversy to be waged between them, but that he is in the position of a mere innocent stakeholder or depositary, and that no act on his part has caused the embarrassment of conflicting claims and the peril of double vexation. When he stands to either of the parties in the relation of a wrongdoer, or it appears that by his own act or conduct double claims have been caused, he is not innocent, he is not without interest, and the court will not intervene to relieve him from the embarrassment in which he has voluntarily involved himself." See also, 15 R. C. L., page 227, where the above doctrine is also stated and thus illustrated:

"Thus, where a warehouseman, as agent, sells the property of his bailor stored with him to a purchaser who leaves the property in the warehouse, he is not entitled to file a

bill of interpleader to prevent suits brought against him by the original bailor who denies the agency, and by the purchaser, both of whom claim title to the property. So, if a sheriff has seized goods on execution that were not subject to levy, he is as to the true owner a wrongdoer and cannot require him to interplead with the creditor to determine the validity of the levy." *Security State ·Bank* v. *Melchert,* 67 Mont. 535, 216 P. 340; *Jax Ice, etc., Storage Co.* v. *South Florida Farms Co.,* 91 Fla. 593, 109 So. 212, 48 A. L. R. 957; *Stusser* v. *Mutual Union Ins. Co.,* 127 Wash. 449, 221 Pac. 331; *Sewanee Fuel, etc., Co.* v. *Leonard,* 139 Tenn. 648, 202 S. W. 928, L. R. A. 1918D, 1170. See also, note, 60 A. L. R., page 728, *et seq.;* R. C. L., Perm. Supp., page 3900; *Florida East Coast R. Co.* v. *Eno,* 99 Fla. 887, 128 So. 622, 70 A. L. R. 506.

The case of *Runkle's Adm'r* v. *Runkle's Adm'r,* 112 Va. 788, 72 S. E. 695, 697, is not only instructive but also controlling of the question here involved. In that case Judge Buchanan, speaking for this court, said:

"The right to file a bill of interpleader does not lie in every case where two or more persons claim the same thing, debt, or duty from a third person and he is in doubt as to which of them he ought to render the debt or duty or deliver the thing; but the jurisdiction of a court of equity to grant that remedy independent of statute is confined in much narrower limits.

\*     \*     \*     \*     \*     \*     \*     \*

"In section 1322 of Pomeroy it is said: 'That from the description in a previous paragraph and from the whole course of authorities, it is clear that the equitable remedy of interpleader, independent of recent statutory regulations, depends upon and requires the existence of the four following elements, which may be regarded as its essential conditions: 1. The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent upon or derived from a common source; 3. The person asking the relief—the plaintiff—must not have nor

claim any interest in the subject matter; 4. He must have incurred no independent liability to either of the claimants —that is, he must stand perfectly indifferent between them in the position merely of a stakeholder.' "

Applying the foregoing principles to the instant case, it is clear that the right of the warehouse company to file a bill of interpleader was lacking in several essentials. While said company disclaimed any interest in the money brought into court which was derived from the proceeds of the sale, it appears both from the pleadings and evidence in the case that the sale was invalid, that the amount due the warehouse company by Mrs. Harrison is disputed, and that the warehouse company having made an invalid sale of her goods has incurred an independent liability by placing itself in the position of wrongdoer, and cannot, therefore, stand indifferent and without interest in the controversy. It moreover appears that the claims of the defendants in the bill of interpleader are not dependent upon or derived from a common source. Mrs. Harrison claims the goods from which the proceeds were derived as her own, while the execution creditors claim that the goods belonged to Mrs. Harrison's husband, and for that reason were liable to the executions they held against him.

It may be observed that while section 1306 of the Code gives the warehouseman the right to require all known claimants to interplead where more than one person claims the title or possession of the goods, it is clear that the statute has no application to the facts of this case, but only to a case in which the warehouseman who has possession of the goods which have been placed with him in storage, to which two or more persons claim title or the right of possession. In such a case the warehouseman would stand entirely indifferent between the adverse claimants of such title or right of possession. The case here presents an entirely different proposition, for the reason that the warehouseman has wrongfully sold the goods and no longer has possession of them, and the only controversy which is set up by the storage company in the bill of interpleader is that

the creditors of the husband of the depositor claim execution liens against them. Mr. Harrison was not made a party to the suit, and the warehouse company cannot compel Mrs. Harrison to litigate her title to the property with her husband's creditors in this proceeding. In fact, there is no pretense on the part of the warehouse company that the above section is applicable.

We are, therefore, of the opinion that the court below was plainly right in setting aside the decree of December 10, 1932, and dismissing complainant's bill as asked in the petition for rehearing. The decree complained of must be affirmed.

*Affirmed.*