## CIRCUIT COURT OF FAIRFAX COUNTY

Board of Supervisors
of Fairfax County et al.

v.

Barrie M. Peterson et al.

October 6, 1989

Case No. (Chancery) 91446

By JUDGE RICHARD J. JAMBORSKY

Petitioners Board of Supervisors of Fairfax County, Virginia, and County of Fairfax, Virginia, seek to interplead respondents, Barrie M. Peterson and Hillside Landing Partnership ("HLP") and Service Corporation of America ("SCA"). SCA filed a demurrer and plea in bar in response to the County's Petition. The Court overrules the demurrer but sustains the plea in bar for the following reasons.

The underlying dispute arose from a contract between petitioners and HLP. HLP and petitioners entered a development agreement for improvements to the subdivision known as Hillside Landing Section II ("the Project"). To secure HLP's performance, HLP provided a $197,000.00 letter of credit drawn on Dominion Federal Savings and Loan Association. The letter of credit allowed petitioners to draw down the full amount if petitioners declared HLP to be in default; the letter also required petitioners to refund to Dominion any amounts drawn which were not used to meet the costs of completing the improvements to the Project.

After petitioners declared HLP in default, they drew down the full amount of the letter of credit. Petitioners

hired SCA to finish the improvements to the Project. SCA alleges that it completed these improvements and submitted evidence of reimbursable expenses in the amount of $94,945.88, but petitioners did not reimburse SCA for these expenses.

SCA sued petitioners for breach of contract, in Law No. 90485. HLP seeks to intervene in that action. Petitioners and HLP contend that SCA has no right to reimbursement for these expenses because SCA was paid for all reimbursable work when SCA recovered $253,054.59 plus interest and miscellaneous costs in *Service Corp. of Alexandria v. Peterson*, Law No. 69514.

HLP asked petitioners to return the proceeds of the letter of credit, but petitioners denied the request. This denial is the subject of a pending appeal, in Law No. 82629. Petitioners filed a plea in bar to that action, contending that the Court lacks jurisdiction because HLP failed to post the requisite appeal bond. HLP opposes the plea in bar, contending that it filed the appropriate bond.

Petitioners now want to interplead HLP and SCA as rival claimants to the proceeds of the letter of credit. Petitioners maintain that they have no interest in or claim to this fund. They have turned over the undisputed portion of the fund to HLP and offered to tender the disputed portion to the Court. SCA filed a demurrer and plea in bar to the petition, and HLP consented to the petition (reserving its rights against petitioners for any claims independent of the *res*).

In its plea in bar, SCA contends that the interpleader should be denied for three reasons.[1] First, SCA contends

---

[1] SCA also contends that petitioners should be estopped from seeking interpleader because they continued to demand SCA's performance of the Completion Agreement after they knew that HLP planned to contest the decision to declare HLP in default. Before finding that a petitioner is estopped or barred from seeking relief in interpleader, however, courts require a clear showing of wrongful actions or callous indifference to the rights of claimants. E.g., Boice v. Boice, 48 F. Supp. 183 (D. N.J. 1943); aff'd, 135 F.2d 919 (3d Cir. 1943) (fraud); cf., U.S. Auto Ass'n v. Germantown Sav. Bank, 449 F. Supp. 905 (E.D. Pa. 1978) (interpleader allowed despite petitioner's carelessness in allowing a garnishment judgment to be entered when it incorrectly admitted liability on claims which

that the Court lacks jurisdiction over the matter because HLP failed to file an appeal bond in Law No. 82629. Second, SCA contends that interpleader is not appropriate because petitioners are independently liable. Third, SCA contends that any claims by HLP against SCA in interpleader would be barred by *res judicata.* SCA's demurrer asserts an additional reason why the petition for interpleader should be denied. SCA contends that HLP has no right to any part of the fund under the terms of the Letter of Credit specifying that unused proceeds of the letter of credit were to be returned to Dominion Federal Savings & Loan Association. Additionally, the demurrer reasserts that interpleader should be denied because petitioners are independently liable.

### Jurisdiction

The Court has jurisdiction over the interpleader action despite SCA's contention that HLP's pending claim against the County is meritless. Jurisdiction over interpleader does not depend on the merits of the claims of the parties interpleaded. *Bierman v. Marcus,* 246 F.2d 200, 202 (3d Cir. 1957), *cert. den'd sub nom. Milmar Estate, Inc. v. Marcus,* 356 U.S. 933 (1958). A petitioner may maintain an interpleader action even though he believes that one claim is without merit; a petitioner need only assert a real and reasonable fear of exposure to double liability or the vexation of conflicting claims. *Id.* (in which petitioner's fear was unreasonable only because the petitioner controlled the respondent corporation and its actions).

Petitioners in the case at bar reasonably feared exposure to double liability or the vexation of conflicting claims although they filed a plea in bar to the motion for judgment in Law No. 82629. That plea alleges that HLP's failure to file a mandatory appeal bond precluded HLP from suing on the underlying claim, but HLP denied the facts alleged in that plea; HLP asserts that it filed the bond when it filed its motion for judgment. Because

were subordinated to the mortgagee's claims). SCA has not clearly shown that petitioners' actions or attitudes were wrongful.

the outcome of that plea is uncertain, petitioner's fear of conflicting claims is justified. Furthermore, HLP has filed at least three actions against Petitioners based on this dispute. Petitioners might reasonably expect HLP to file other claims if the pending one is resolved in Petitioner's favor. Because interpleader is equally appropriate when claims are potential rather than pending, the Court cannot say that the County has no reasonable fear of a conflicting claim by HLP.

For these reasons, the first count of the plea in bar is overruled.

### HLP's Rights to the Fund

Interpleader is appropriate despite the provision of the letter of credit directing that unused proceeds be returned to the issuer, Dominion Federal. The principles governing the previous question dictate the same result in this situation: a petitioner need only have a real and reasonable fear of a conflicting claim; *Bierman v. Marcus*, 246 F.2d at 202. A petitioner is not required to prove that a potential claimant is entitled to the *res*; rivals prove their rights during the interpleader action. Inferences readily drawn from the petition support petitioner's allegations that it feared multiple or conflicting claims from HLP. It is reasonable to infer that HLP would have been required to reimburse the issuer of the letter of credit for any amount drawn; HLP would then be subrogated to the issuer's rights in the unused proceeds. HLP might also have standing as a third-party beneficiary of that provision of the letter of credit. Because petitioners might reasonably fear claims by HLP in these circumstances, the first count of the demurrer is overruled.

### Res Judicata

Nor would the previous litigation between SCA and HLP bar an interpleader action. The Court is not convinced that all HLP's claims are barred by *res judicata*. HLP's claims to the proceeds of the letter of credit were not raised or decided in the previous lawsuit. Similarly, HLP's contention that it paid SCA as a result of the previous litigation could not have been decided at that

time. Finally, HLP does not appear to have raised rights as subrogee or third-party beneficiary in the former lawsuit, and no argument has been made that HLP had the right to do so at the time; therefore *res judicata* would not bar HLP from asserting them now. The third count of the plea in bar is overruled for these reasons.

*Independent Liability*

a. *The County's Liability to SCA under the Completion Agreement.*

Interpleader would be appropriate despite SCA's contention that petitioners are absolutely liable to it under the Completion Agreement. The Court is of the opinion that the petitioners' liability to SCA under the Completion Agreement is payable only from the proceeds of the letter of credit. The language of the Completion Agreement unambiguously shows that SCA agreed to accept payment only from the proceeds of the letter of credit. To illustrate, the preamble recites the history of the fund and specifies that HLP's default and the existence of the fund were petitioners' reasons for entering the agreement. More to the point, the body of the Agreement specifies that petitioners agreed to compensate SCA by "assign[ing] and pay[ing] over monies for this work to Service Corporation from the funds that it holds under the letter of credit." Completion Agreement, Paragraph 15. These provisions alone might not condition payment on the existence of the fund, but when they are read *in pari materia* with the following paragraphs, the nature and outer limits of the County's liability seem clear:

> 16. *Such assignment and payment* shall be limited to the amount of $197,000.00 . . . and further limited by paragraphs 17, 18, and 19 below; and . . . .
> 18. After Service Corporation completes the improvements according to this Completion Agreement and the plans for [the Project], Service Corporation *shall be assigned and paid from the funds held by the County pursuant to the call of the Letter of Credit.*

*Id*. (Emphasis added.)

Beyond this, SCA owned lots in the Project and was a co-developer in the Project, so SCA had a substantial interest in seeing that the Project was finished. Given this interest, the Court does not find it inconceivable that SCA would have agreed to accept payment only from the proceeds of the letter of credit. For the purposes of the demurrer, the Court finds that petitioners' liability under the Completion Agreement was conditioned on payment from the fund; the second count of the demurrer is therefore overruled.

### b. *Petitioner's Liability Independent of the Contract.*

Petitioners might, nevertheless, be independently liable to SCA. Although the Court believes that petitioners are not independently liable under the completion agreement, SCA has also asserted that it should be able to recover in equity, even if the Completion Agreement conditioned payment on the maintenance of the fund. The general rule is that when an express, enforceable contract governs the rights of the parties, the Court will not grant recovery in contravention thereof. *See, e.g.,* 4B Michie's Jurisprudence *Contracts* § 99 and cases cited at n. 8 (1983). However, SCA might have a claim in equity if the Completion Agreement were unenforceable. HLP argues that the Completion Agreement was void because petitioners failed to comply with government procurement regulations; HLP says that it would raise this argument in the case at bar or in Law No. 90485 (if it is allowed to intervene in that action). The Court does not say whether this argument can be raised or sustained, but if the contract were unenforceable, SCA might be able to recover in *quantum meruit.*

Petitioners may also be independently liable to HLP. HLP may have a cause of action against petitioners for wrongfully calling the bond. Further, HLP expressly reserved its rights against petitioners when HLP consented to the petition for interpleader; this suggests that HLP may pursue independent action against petitioners. If petitioners wrongfully called the bond, they should run the risk of liability for having done so. It would be

unfair to pass that risk on to SCA because petitioners would be personally liable.

It would be unfair to shift the risk of petitioners' potentially independent liability to either SCA or HLP by discharging petitioner and forcing SCA and HLP to fight over the fund. When claims are independent of the fund, the interpleader action would not settle the independent claims. Courts should not grant relief in interpleader when one action cannot settle all existing claims between the parties. *E.g.*, *National Surety Corporation v. Globe Indemnity Company*, 331 F. Supp. 208, 210 (E.D. Pa. 1971) *quoted in*, *American Fidelity Fire Insur. Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164, 174 (D. St. Croix V.I. 1975). Furthermore, interpleader would unnecessarily burden the respondents if the interpleader action were to determine only rights to the fund without discharging petitioner from liability independent of the fund. The Court believes that interpleader would be inappropriate in these circumstances.

Arguably, the Court might have allowed the interpleader action to continue without discharging the petitioners; the Court might add a third (and perhaps fourth) stage to the interpleader action to determine petitioner's independent liability.[2] In the Court's opinion, this would

---

[2] This course seems permissible under modern interpleader statutes. Commentators have recommended it. See, e.g., Note, 13 U. Richmond L. Rev. 331, 345-347 (1979) (citing Chafee, "Modernizing Interpleader," 30 Yale L.J. 814 at 843 (1921), and 3A Moore's Federal Practice sect. 22.14[3] at 22-131 (2d ed. 1978)). The use of the permissive "may" in Virginia's interpleader statute implies discretion to retain the petitioner. The statute provides,"[s]uch court shall hear and determine the case and may discharge the appropriate party from further liability." Virginia Code Section 8.01-364(C). The statute also says that after the petitioner pays or tenders the res into court, "the court may thereupon order such party discharged from all or part of any liabiity as between the claimants of such property." Id., subsection D.

The legislative history of Section 8.01-364 also supports the idea that an action for interpleader may be allowed despite a petitioner's independent liability. See Revision of Title 8 of the Code of Virginia, Report of the Virginia Code Commission to the Governor and the General Assembly of Virginia, House Document No. 14 at 235 (1977): "In short, the reasons underlying the interpleader remedy -- i.e., avoidance of the vexation of multiple claims to disputed property

further complicate the pending litigation without relieving petitioner of whatever vexation it suffers from defending against the rival claims to the funds. Moreover, petitioners might achieve similar relief by moving to join HLP in the pending suit between SCA and petitioners. Therefore, the second count of the plea in bar is sustained.

For these reasons, the Court overrules the demurrer but sustains the plea in bar.

and of possible multiple liability arising from those claims, and the substitution of one comprehensive litigation for an extended series of individual actions-continue to have merit even when the person interpleading may be liable to one of the claimants on an independent basis . . . .

"Thus, it is the reviser's belief that the problem of independent liabiity is best left to the wisdom and discretion of the trial court. Upon review of the facts and the pleading, the court may choose to (1) dismiss the claim, (2) order severance or separate trials, or (3) require that the independent claim to the disputed property be tried in the interpleader action." Id. at 236.